**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 20, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

CHRISTOPHER BARNETT,

     Plaintiff - Appellant/Cross-Appellee,

v.

HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.; J. KEVIN HAYES, Special Administrator of the Estate of John Patrick Cremin; JOHNATHAN L. ROGERS; UNIVERSITY OF TULSA, a private university,

     Defendants - Appellees/Cross-Appellants.

_____

No. 18-5090

CHRISTOPHER BARNETT,

     Plaintiff - Appellee,

v.

HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.; J. KEVIN HAYES, Special Administrator of the Estate of John Patrick Cremin; JOHNATHAN L. ROGERS,

     Defendants - Appellants,

and

No. 18-5091

UNIVERSITY OF TULSA,

     Defendant.

_____

CHRISTOPHER BARNETT,

     Plaintiff - Appellee,

v.

UNIVERSITY OF TULSA,

     Defendant - Appellant,

and

HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.; J. KEVIN HAYES, Special Administrator of the Estate of John Patrick Cremin; JONATHAN L. ROGERS,

     Defendants.

No. 18-5092

_____

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:18-CV-00064-TCK-FHM)**

_____

Brendan M. McHugh, Route 66 Attorneys, L.L.C., Claremore, OK (Dana Jim, Route 66 Attorneys, L.L.C., Claremore, OK, on the briefs) on behalf of Appellant/Cross-Appellee.

John David Lackey, Tulsa, OK (Phil R. Richards, Tulsa, OK, on the briefs) on behalf of Appellees/Cross-Appellants.

_____

Before **HARTZ**, **BALDOCK**, and **EID**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

Plaintiff Christopher Barnett appeals the judgment of the United States District Court for the Northern District of Oklahoma dismissing with prejudice his federal civil-rights claims for failure to state a claim and dismissing with prejudice his state-law claims because they do not survive the restrictions imposed by the Oklahoma Citizens Participation Act (OCPA), Okla. Stat. tit. 12, §§ 1430–40 . Defendants cross-appeal the district court's denial of attorney fees under the OCPA, contending that an award of attorney fees is mandatory. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.

 We affirm the dismissal of the federal-law claims, agreeing with the district court that the complaint does not adequately allege that any of the Defendants acted under color of state law. But we reverse the judgment on the state-law claims and remand to the district court with instructions to dismiss the claims without prejudice or remand them to the state court. Our reversal is in keeping with the regular practice in this circuit of dismissing without prejudice state-law claims for which the district court has only supplemental, rather than original, jurisdiction when the federal-law claims to which they are supplemental are dismissed early in the litigation. Because of the reversal, we have no occasion to consider the merits of Defendants' cross-appeal on attorney fees.

Barnett's complaint bases his claims on an incident on January 4, 2018, related to a hearing in Oklahoma state court on an open-records case he had brought against Tulsa Community College. According to Barnett, two lawyers in the firm of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., (Hall Estill)— namely, J. Patrick Cremin and

Jonathan Rogers— falsely reported to the office of the state attorney general (AG) that Barnett had made a threat. (When, where, or to whom it was allegedly directed are not disclosed in the complaint.) The AG's office then relayed this report to the county sheriff. When Barnett arrived at the courtroom for the hearing, the state-court judge instructed him to speak with a deputy sheriff. After Barnett denied making any threat, the deputy told him to stay inside the courtroom until he received permission to leave. At some point the AG's office arrived with its own security detail. When the proceedings began, the state-court judge discussed the report in open court.

Barnett filed suit in state court the next day against Cremin, Rogers, Hall Estill, and Tulsa University (TU), alleging federal civil-rights claims under 42 U.S.C. § 1983 and state tort claims because he had been unlawfully seized when he was forbidden to leave the courtroom, had been cast in a false light by the public airing of the alleged threat, and had been retaliated against by Defendants for his exercise of his rights to free speech and access to the courts. (TU is not mentioned in the complaint except to say that Hall Estill is representing TU in a state-court lawsuit brought against it by Barnett's husband and that Barnett has criticized TU in "numerous public forums." Aplt. App. at 2.) Defendants removed the case to federal court under 28 U.S.C. § 1441(a) based on the federal district court's original jurisdiction over claims under § 1983. The district court then had jurisdiction over the state-law claims under the court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

Shortly after removal, Defendants moved to dismiss the federal and state claims, and Barnett moved to recuse the district-court judge. The district court denied Barnett's

4

motion to recuse. And it dismissed with prejudice the federal claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because the allegations of the complaint would not support a finding that Defendants acted under color of state law.

In the same order dismissing the federal claims, the district court applied the OCPA and dismissed with prejudice the state claims. Before summarizing the district court's ruling, a further description of the state statute will be useful. The OCPA is one of a number of state laws throughout the country that are designed to reduce the frequency of what are called SLAPP lawsuits. (SLAPP is an acronym for "Strategic Lawsuit Against Public Participation." *Krimbill v. Talarico*, 417 P.3d 1240, 1245 (Okla. Civ. App. 2017)). As the Oklahoma Court of Civil Appeals has explained: "Anti-SLAPP legislation appears to be the result of an increasing tendency by parties with substantial resources to file meritless lawsuits against legitimate critics, with the intent to silence those critics by burdening them with the time, stress, and cost of a legal action. To [curb such lawsuits], anti-SLAPP acts typically provide an accelerated dismissal procedure, available immediately after a suit is filed in order to weed out meritless suits early in the litigation process." *Id.*; *see Anagnost v. Tomecek*, 390 P.3d 707, 709–10 (Okla. 2017) ("The stated purpose of the [OCPA] is to encourage and safeguard the constitutional rights of persons to 'petition, speak freely, associate freely and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file a meritorious lawsuit for a demonstrable injury.' It accomplishes this goal by allowing parties to file motions to dismiss legal actions if the legal action relates or is in response to free speech." (quoting Okla. Stat. tit. 12, § 1430 )).

5

Under the OCPA, if a defendant shows that the plaintiff's claim relates to the defendant's exercise of the right to free speech[1], to petition, or of association, then the plaintiff must show by "clear and specific evidence a prima facie case for each essential element" of the claim. *Krimbill*, 417 P.3d at 1245 (quoting § 1434(C)). If the plaintiff carries that burden, the defendant can avoid further proceedings by proving "by a preponderance of the evidence" a valid defense to the plaintiff's claims. *Id.* (quoting § 1434(D)). If the plaintiff fails to show by clear and specific evidence a prima facie case, or if the defendant proves a valid defense by a preponderance of the evidence, the court must dismiss the plaintiff's case. *See* Okla. Stat. tit. 12, § 1434. The OCPA also provides for attorney fees to prevailing defendants. *See id.* § 1438.

Although this court had held in *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 673 (10th Cir.), *cert. denied*, 139 S. Ct. 591 (2018), that the New Mexico anti-SLAPP statute does not apply in federal court, the district court did not believe itself bound by our precedent. The district court correctly understood *Los Lobos* to be "carefully limited to the New Mexico law it addresses." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, No. 18-cv-00064-TCK-FHM, 2018 WL 4038117, at *3 (N.D. Okla. Aug. 23, 2018). Our prior opinion was "based on the text of the New Mexico law and distinguish[ed] it from other anti-SLAPP statutes . . . 'that shift substantive burdens of proof, or alter substantive standards.'" *Id.* (quoting *Los Lobos*, 885 F.3d at 670). The district court reasoned that the

---

[1] The statute defines *Exercise of the right of free speech* to mean "a communication made in connection with a matter of public concern." Okla. Stat. tit. 12, § 1431(3).

6

OCPA was different, because it "employs . . . substantive standards." *Id.* And unlike the New Mexico courts, which have held that the New Mexico law was procedural, an Oklahoma court has "indicate[d] that the OCPA is not merely procedural." *Id.* (citing *Steidley v. Cmty. Newspaper Holdings, Inc.*, 383 P.3d 780, 785–87 (Okla. Civ. App. 2016)).

Applying the OCPA framework, the district court first ruled that Barnett's state-law claims related to Defendants' exercise of the right to free speech because the communication alleged by the complaint (a report of a threat) was related to health or safety, which is a matter of public concern under the OCPA. The burden then fell on Barnett to establish by clear and specific evidence his prima facie case. The district court walked through the elements of each of his state-law claims and concluded that he had presented no evidence to support them. It dismissed with prejudice the state-law claims.

## I.     DISCUSSION

We address in turn (1) the dismissal of the federal § 1983 claims, (2) the dismissal of the state claims under the OCPA, and (3) the denial of the motion to recuse.

### A.     Section 1983 Claims

We review de novo the dismissal of a complaint under Rule 12(b)(6). *See Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "In doing so, we ask whether there is plausibility in the complaint. The complaint does not need detailed factual allegations, but the factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations, brackets, and internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7

"To state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). Missing from Barnett's complaint were allegations sufficient to establish action by Defendants under color of state law. "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* at 50 (internal quotation marks omitted). "Where a litigant seeks to hold a private actor accountable as a state actor for constitutional deprivations, we have applied various analyses and referred to them as the 'nexus test,' the 'public function test,' the 'joint action test,' and the 'symbiotic relationship test.'" *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013). At the heart of each test is "whether the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 387 (10th Cir. 2016) (internal quotation marks omitted).

Defendants are all private actors. Barnett argues that they nevertheless acted under color of state law because their actions satisfied the tests for joint action and symbiotic relationship with the AG's office. We disagree.

The first test is whether the private party was "a willful participant in joint action with the State or its agents." *Gallagher*, 49 F.3d at 1453. Barnett contends that his complaint establishes joint action because it alleges that Defendants conspired with state officers. *See Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126 (10th Cir. 2000) ("[O]ne way to prove willful joint action is to demonstrate that the public and

8

private actors engaged in a conspiracy."). "When a plaintiff seeks to prove state action based on a conspiracy theory, a requirement of the joint action charge is that both public and private actors share a common, unconstitutional goal." *Id.* (ellipsis and internal quotation marks omitted).

But Barnett failed to adequately allege a conspiracy. His claim of a conspiracy is conclusory, devoid of allegations of specific facts in support. *See Beedle v. Wilson*, 422 F.3d 1059, 1073 (10th Cir. 2005) ("[T]he plaintiff must specifically plead facts tending to show agreement and concerted action." (internal quotation marks omitted)). All he alleges is that Defendants filed a false threat report with officials in the AG's office. But "furnishing information to law enforcement officers, without more, does not constitute joint action under color of state law." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1157 (10th Cir. 2016). "Rather, joint action arises only when an officer's decision to initiate an arrest or a prosecution was not independent of a private party's influence." *Id.* The complaint contains no factual allegations to support a plausible inference that the AG's office acted under Defendants' influence beyond their being a source of information.

Barnett's argument under the symbiotic-relationship test fares no better. That test has rarely been applied, *see Gallagher*, 49 F.3d at 1451, and has been limited to substantial, intimate long-term relationships, *see Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961) (public parking authority that leased space to segregated restaurant on which the parking facility was financially dependent had "so far insinuated itself into a position of interdependence with [the restaurant] that it must be recognized as a joint participant in the [racially discriminatory] activity"); *Milo v.*

9

*Cushing Municipal Hosp.*, 861 F.2d 1194, 1196 (10th Cir. 1988) (city "substantially participated in the funding, creation, and financial structure of the Hospital," and three city commissioners were trustees that oversaw the hospital).

The situation alleged here is a far cry from what has been held to be a symbiotic relationship. There are no factual allegations regarding any past relationship whatsoever between Defendants and the AG's office; and there is certainly no indication that either is dependent on the other. We reject Barnett's suggestion that the isolated incident described in the complaint could establish a symbiotic relationship.

To salvage his claims, Barnett makes two cursory procedural arguments. He says that the district court erred by (1) denying him leave to amend his complaint, and (2) sua sponte dismissing the federal claims as to Hall Estill. Both can be disposed of quickly. The first fails on two grounds. One is that he did not request leave to amend at any time in district court. *See Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013) ("Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave."). He excuses his failure on the ground that he was awaiting a ruling on the motion to dismiss before trying to cure any possible defects. But cases are not to be litigated piecemeal. The court should not have to address repeated "improvements" to the complaint. When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time. Efficient adjudication of disputes requires that the party present its best effort to state a claim before the court addresses the motion to dismiss. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) ("[W]e have

10

upheld the denial of leave to amend when the moving party . . . attempted to present theories of recovery *seriatim* to the district court."); *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (similar). The second ground for rejecting his argument that he should be allowed to amend his complaint is that Barnett has not explained on appeal "how a proposed amendment would cure the deficiencies identified by the district court." *Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009).

Similarly, we will not reverse the sua sponte dismissal of the federal claims against Hall Estill because Barnett offers no argument to support the claims, or possible amended claims, against the firm. *See McKinney v. Okla. Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991) (sua sponte dismissal "is not reversible error when it is patently obvious that the plaintiff could not prevail on the facts alleged . . . and allowing him an opportunity to amend his complaint would be futile" (internal quotation marks omitted)).

We therefore affirm the district court's dismissal of Barnett's § 1983 claims against all Defendants.

### B. State Claims

The district court dismissed Barnett's state claims under the dismissal procedure of the OCPA. It applied that state statute because it saw no conflict between it and the Federal Rules of Civil Procedure for two reasons: First, it said that "the OCPA is a statement of the substantive policy of the State of Oklahoma," whereas the Federal Rules "do not provide any policy goals, nor any burden shifting and changes to substantive standards to enact these goals." *Barnett*, 2018 WL 4038117 at *4. Second, it said that a

11

motion to dismiss under the OCPA "will not interfere with the operation" of Federal Rules of Civil Procedure 8, 12, or 56. *Id.*

We are not so sure. We recognize that our decision in *Los Lobos*, 885 F.3d at 673 n.8, which rejected the application in federal court of the New Mexico anti-SLAPP statute, is not controlling. In that case we simply held that the Federal Rules governed because the state law was strictly procedural (merely requiring that standard procedures be expedited). *See id.* at 668–72. Nevertheless, we did say that it was "very much debatable" whether the New Mexico statute could operate alongside the Federal Rules without conflict. *Id.* at 673 n.8.[2]

More closely in point is the persuasive reasoning of the D.C. Circuit in an opinion by then-Judge Kavanaugh holding that the District of Columbia anti-SLAPP statute could not apply in federal district court. *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015). Relying on *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), the circuit court adopted a more expansive view than that expressed by the district court here of when state law conflicts with a Federal Rule. It

---

[2] Although the federal court's jurisdiction over the state-law claims in *Los Lobos* was based on diversity of citizenship whereas here the federal court had supplemental jurisdiction over the state-law claims, we apply in both circumstances the same analysis in determining whether federal or state law governs. *See BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (The rule in diversity cases that the federal court "applies the substantive law . . . of the forum state . . . also applies when a federal court exercises supplemental jurisdiction over state law claims in a federal question lawsuit.") (internal quotation marks and citation omitted)).

read the portion of the lead opinion in *Shady Grove* that was joined by a majority of the

Supreme Court[3] as stating that a valid Federal Rule prevails over state law if the Federal

Rule "answers the same question as the state law or rule." *Abbas*, 783 F.3d at 1333

(brackets and internal quotation marks omitted). The opinion goes on to say that "Federal

Rules of Civil Procedure 12 and 56 'answer the same question' [as the D.C. statute] about

the circumstances under which a court must dismiss a case before trial. . . . Under the

Federal Rules, a plaintiff is generally entitled to trial if he or she meets the Rules 12 and 56

standards to overcome a motion to dismiss or for summary judgment. But the D.C. Anti–

SLAPP Act nullifies that entitlement in certain cases." *Id.* at 1333–34.

Perhaps there is in practice no real difference between the OCPA and the Federal

Rules because the same analysis is to be used for both application of the OCPA dismissal

standards and the Federal Rules for dismissal for failure to state a claim and summary

judgment.[4] If there is a difference, however, an analysis under the Federal Rules Enabling

Act, 28 U.S.C. § 2072, would be necessary to determine whether the Federal Rules could

---

[3] Justice Stevens wrote a concurring opinion. His opinion joined the plurality opinion of four other Justices on this issue but differed on how to analyze whether the Rules Enabling Act limits the application of a Federal Rule.

[4] In *Krimbill*, 417 P.3d at 1247, the Oklahoma Court of Civil Appeals said that "disputed questions of material fact cannot be resolved in an OCPA dismissal proceeding," suggesting that there may be no significant difference between the Oklahoma statutory procedures and the Federal Rules. *See Abbas*, 783 F.3d at 1335 n.3 (noting the possibility that "if a State anti-SLAPP act did in fact exactly mirror Federal Rules 12 and 56," it may not be preempted by the Federal Rules.)

be applied.[5]  *See Abbas*, 783 F.3d at 1333 ("A federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rules of Civil Procedure answers the same question as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." (brackets and internal quotation marks omitted)).  But we need not decide that issue because Barnett's state-law claims come before us only under the district court's supplemental jurisdiction.

The Supreme Court has encouraged the practice of dismissing state claims or remanding them to state court when the federal claims to which they are supplemental have dropped out before trial.  *See, e.g.*, *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over

---

[5]  *Abbas* concluded that "Rules 12 and 56 are valid under the Rules Enabling Act" because "pleading standards and rules governing motions for summary judgment are procedural."  783 F.3d at 1337.  We should note, however, that it decided that the concurring opinion of Justice Stevens in *Shady Grove* did not create Supreme Court law on how to determine whether a federal rule is authorized by the Rules Enabling Act and instead followed *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941).  But we are bound by Tenth Circuit precedent which has said that Justice Stevens's opinion controls the analysis on that question.  *See Los Lobos*, 885 F.3d at 668 n.3; *Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 983 n.6 (10th Cir. 2010).

Of course, state anti-SLAPP statutes differ in their particulars, and the analyses of different circuits do not always agree.  Several circuits have applied such state statutes in federal court.  *See Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010) (Maine's anti-SLAPP statute); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (California's statute); *cf. Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 168 (5th Cir. 2009) (applying Louisiana's statute without analysis).

the remaining state-law claims"); *id.* (stating that in a case removed from state court the district court had discretion to either dismiss the state-law claims or remand them to state court); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). This court has followed suit when the claims over which the district court had original jurisdiction are dismissed on pretrial motion, especially when the state claims raise novel issues of state law. *See VR Acquisitions, LLC v. Wasatch Cty.*, 853 F.3d 1142, 1149 (10th Cir. 2017) (reversing district court's dismissal with prejudice of state-law claims and remanding for dismissal without prejudice); *Merrifield v. Bd. of Cty. Comm'rs for Cty. of Santa Fe*, 654 F.3d 1073, 1086 (10th Cir. 2011) (reversing district court's grant of summary judgment on state claim because "the interest in comity— leaving to the states to decide novel questions of state-law—clearly predominates here."); *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (reversing district court's grant of summary judgment on state claim because disputed issue of Colorado law was "best left for a state court's determination."); *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (reversing summary judgment "[w]here a state law cause of action is thus in a process of current evolution, it is particularly appropriate for the federal courts to leave the continuing development and application of that cause of action to the state courts.").

In this case the district court resolved the federal-law claims at a very early stage of the litigation. This in itself counsels dismissal without prejudice of the state-law claims at the same time. In addition, there is a novel issue of state law regarding attorney-fee awards under the OCPA. The OCPA provides that "the court shall award to

15

the moving party . . . [c]ourt costs, reasonable attorney fees and other expenses incurred in defending against the legal action *as justice and equity may require*." Okla. Stat. tit. 12, § 1438(A) (emphasis added). Oklahoma courts have not addressed whether the justice-and-equity clause modifies all items in the series (court costs, reasonable attorney fees, and other expenses) or only the last item (other expenses);[6] and neither did the district court when it declined to award attorney fees on the ground of justice and equity. Thus, comity considerations add an additional thumb on the scale in favor of dismissal. Further, we note that the federal-law issue of whether to apply anti-SLAPP statutes like the OCPA in federal court is a challenging one and has divided the circuits. It makes sense to wait to decide the issue until we must do so, perhaps after helpful development of both federal law and Oklahoma case law interpreting the statute.

We therefore reverse the dismissal of the state claims under the OCPA and remand with instructions to dismiss them without prejudice or remand them to state court. Because of our disposition of this issue, we need not address Barnett's remaining challenges to the OCPA.

###     C.     Recusal

Barnett challenges the district judge's denial of his motion to recuse. A district judge "shall disqualify himself in any proceeding in which his impartiality might

---

[6] The OCPA was modeled on the Texas anti-SLAPP statute. *See Krimbill*, 417 P.3d at 1244 ("Oklahoma's Act, which became effective in 2014, mirrors that of the Texas Citizens' Participation Act."). And the Texas Supreme Court has interpreted the Texas fee provision, which contains the same text as the OCPA, to "limit the justice-and-equity modifier to other expenses." *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016).

reasonably be questioned." 28 U.S.C. § 455(a). "[W]hat matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). Thus, "[t]he test under § 455(a) is not whether the judge believes he or she is capable of impartiality." *Burke v. Regalado*, 935 F.3d 960, 1054 (10th Cir. 2019). Rather, we ask whether a reasonable person, fully informed of the relevant facts, would "question the judge's impartiality." *Id.* We review for abuse of discretion the denial of a motion to disqualify. *See id.* at 1052.

On appeal Barnett argues two grounds for recusal. First, he contends that financial contributions made by the district judge's spouse to TU, her alma mater, created an appearance of impropriety. The district judge had been previously asked to recuse himself in an unrelated case, *see Ross v. Univ. of Tulsa*, No. 14-CV-00484-TCK-PJC, 2017 U.S. Dist. LEXIS 38650, at *1 (N.D. Okla. Mar. 17, 2017), where he explained the nature of the contributions. In 2011 his spouse purchased a life-insurance policy for $16,000. Under the policy TU would receive $100,000 upon her death to endow a scholarship for student athletes in her name. In its announcement of the scholarship, TU attributed the contributions to both the district judge and his spouse. The policy, however, was purchased with her separate funds, and the donation does not appear on the district judge's tax returns.

In our view, the district judge properly rejected the motion for recusal. Three features of the contribution combine to compel this conclusion. To begin with, this is not a case where the judge (or a family member) has a financial interest in the litigation. The contribution was not an investment. The contribution could imply bias only by showing

17

enthusiasm for TU. Courts have repeatedly rejected claims that similar actions reflecting enthusiastic loyalty to a university in themselves require recusal in litigation involving the institution. *See, e.g.*, *Roe v. St. Louis Univ.*, 746 F.3d 874, 886 (8th Cir. 2014) ("Alumni connections are not a reasonable basis for questioning a judge's impartiality, even if alumni contribute financially or participate in educational activities."); *Chalenor v. Univ. of N.D.*, 291 F.3d 1042, 1049–50 (8th Cir. 2002) (stating, in Title IX suit by student wrestlers against university, that "[b]oth the fact that Judge Webb is an alumnus of the University and the fact that he has contributed financially to the University are immaterial, unless the facts indicated a specific and particular interest in the wrestling program or some other particularly relevant problem."); *U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1076 (9th Cir. 1998) ("The judge's main contact with USC was a small yearly contribution to the law school's alumni association. This insignificant contact would not reasonably lead one to question his impartiality, in particular because USC is not a named party and because the relationship between this case and USC's law school is virtually nonexistent."); *Lunde v. Helms*, 29 F.3d 367, 371 (8th Cir. 1994) (in sex-discrimination suit in connection with dismissal from medical school, court said that it did "not think that making alumni contributions or participating in university educational programs, without more, is a reasonable basis for questioning the judge's impartiality."); *Wu v. Thomas*, 996 F.2d 271, 272, 275 (11th Cir. 1993) (in retaliation claim brought by professors against university, the judge's "status as an [unsalaried] adjunct professor and his past contributions to the University" did not warrant recusal). Indeed, a decision by this circuit held that a judge is not disqualified from hearing a case involving a university despite the

18

judge's being a director of that university's alumni association. *See Willner v. Univ. of Kan.*, 848 F.2d 1023, 1026, 1028 (10th Cir. 1988). It is not at all clear to us that a $16,000 contribution to TU shows a stronger attachment than being a director of the alumni association.

The second important feature of the contribution is that it is not specifically tied to activity related to the litigation. The contribution was for scholarships for student athletes. The litigation has no apparent connection to TU's athletic program. *See Chalenor*, 291 F.3d at 1049–50 (in Title IX suit by student wrestlers against university, judge's ties to university were "immaterial, unless the facts indicated a specific and particular interest in the wrestling program or some other particularly relevant problem"); *Nackman*, 145 F.3d at 1070, 1076 (in suit against physicians at university's school of medicine, judge's connections were with law school, whose relationship to the case was "virtually nonexistent"). This is quite different from contributing to an advocacy organization that presents that advocacy in litigation before the judge. *Cf.* Guide to Judiciary Policy, Vol. 2B, Ch. 2, Published Advisory Opinion No. 40 (2009) (acknowledging the propriety of judicial participation in nonprofit civic, charitable, education, religious and social organizations, but advising that a judge should not participate in organizations "if it is likely that the organization will either be engaged in proceedings that would ordinarily come before the judge or will be regularly engaged in adversary proceedings in any court.").

Finally, and perhaps most importantly, the contribution was distinctly made by the judge's spouse, not the judge himself. The enthusiasm was that of the spouse and should

19

not be attributed to the judge. In present-day society we do not treat a married couple as single-minded on public issues. *See Perry v. Schwarzenegger*, 630 F.3d 909, 912 (9th Cir. 2011) (concluding that motion for recusal based on wife's opinions as executive director of the American Civil Liberties Union of Southern California is "based upon an outmoded conception of the relationship between spouses. . . . Because my wife is an independent woman, I cannot accept Proponents' position that my impartiality might reasonably be questioned under § 455(a) because of her opinions or the views of the organization she heads."). We cannot conclude that the spouse's support for TU, without more, would allow a reasonable person to question the judge's impartiality. *Cf. ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 776–77 (10th Cir. 2011) (no recusal required where judge's spouse was of counsel to law firm that had done unrelated work for litigant and spouse had not worked for litigant); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1041 (9th Cir. 2011) (judge's husband's serving as unpaid board member of nonprofit that stood to gain $25,000 as proposed cy pres beneficiary from litigation did not require recusal; the spouse would not benefit "in any way other than to enable [the nonprofit] to continue providing legal services to the indigent").

Barnett's second argument for recusal is that the district judge was biased against him after being apprised by Defendants of his abusive and threatening behavior toward the court. Ordinarily, however, recusal for bias cannot be based on a judge's reaction, or potential reaction, to events during the course of the litigation. Thus, it is well settled that "a motion to recuse cannot be based solely on adverse rulings." *Willner*, 848 F.2d at 1028. But the principle extends beyond that specific application. For example, a judge is not

20

required to recuse himself because of "baseless personal attacks on or suits against the judge by a party," or "threats or other attempts to intimidate the judge." *United States v. Cooley*, 1 F.3d 985, 994 (10th Cir. 1993). As the Supreme Court has recognized: "The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person." *Liteky*, 510 U.S. at 550–51. Nevertheless, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555.

In this case, there is no reason to think that the district judge was influenced in his merits rulings by the reports of Barnett's misconduct communicated to the court by Defendants' counsel or by a totally inappropriate vulgar message left by Barnett on the court's voicemail. The district judge's order rejecting the recusal motion was a model of propriety. The district judge did not abuse his discretion in declining to recuse himself.

## II. CONCLUSION

We **REVERSE** the dismissal of the state-law claims and **REMAND** them with instructions either to remand them to state court or to dismiss them without prejudice. We **DENY** as moot Defendants' cross-appeal request for attorney fees, costs, expenses, and sanctions under the OCPA.