**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 4, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DONALD LEE ROLLE,

     Plaintiff - Appellant,

v.

WYOMING DEPARTMENT OF
CORRECTIONS; CORIZON CORP;
ROBERT LAMPERT, Wyoming
Department of Corrections Director in his
official capacity; MICHAEL PACHECO,
Wyoming Department of Corrections State
Penitentiary Warden in his official
capacity; MARY MAYER, Wyoming
Department of Corrections State
Penitentiary Sergeant in her official
capacity; DENICE DILLON, Wyoming
Department of Corrections State
Penitentiary Grievance Manager in her
official capacity; SANDRA GALVIN,
Wyoming Department of Corrections State
Penitentiary Corporal in her official
capacity; KURT JOHNSON, Corizon Corp
Physician in his official capacity;
SUSANNE LEVENE, Corizon Corp
Physician in her official capacity; LEVI
BRINKERHOFF, Corizon Corp Dentist in
his official capacity; ILENE CHOAL,
Corizon Corp Dental Care Manager in her
official capacity; EWA PODLACHA,
Corizon Corp HAS in her official capacity;
BETH MATHEWS, Wyoming Department
of Corrections Health Services Program
Specialist in her official capacity; PAUL
MARTIN, Wyoming Department of
Corrections Health Services Program
Specialist in his official capacity; MAJ
LOCKWOOD, Wyoming Department of

No. 22-8048
(D.C. No. 1:20-CV-00130-NDF)
(D. Wyo.)

Corrections State Penitentiary Correctional
Officer in his official capacity,

Defendants - Appellees.

———————————————————

**ORDER AND JUDGMENT**[*]

———————————————————

Before **BACHARACH**, **EID**, and **CARSON**, Circuit Judges.

———————————————————

Donald Rolle, a Wyoming prisoner appearing pro se, filed this civil rights action seeking relief against the Wyoming Department of Corrections (WDOC), several WDOC employees, Corizon Corporation (Corizon), and several Corizon employees for various alleged constitutional violations. The district court dismissed some claims and granted summary judgment in favor of defendants on the others. Mr. Rolle now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I

At all times relevant to this lawsuit, Mr. Rolle was in the custody of WDOC and confined at the Wyoming State Penitentiary (WSP) in Rawlins, Wyoming.

———————————————————

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Corizon is a private entity that contracts with WDOC to provide medical and dental services to WDOC inmates.

*A. Dental and medical care*

In May 2018, Levi Brinkerhoff, a dentist employed by Corizon, performed a dental evaluation of Mr. Rolle and noted recurrent decay in tooth number 29. Dr. Brinkerhoff saw Mr. Rolle for a follow-up visit in August 2018 and performed repair work on that tooth.

Mr. Rolle experienced pain following the repair work, and Dr. Brinkerhoff saw him a week later. Dr. Brinkerhoff recommended and ultimately performed an extraction of tooth number 29. Following the extraction, Dr. Brinkerhoff prescribed antibiotic injections, but Mr. Rolle refused to take them.

Over the course of the next ten months, Mr. Rolle continued to experience pain and swelling where the tooth was removed, and also developed a rash and boils on his body. During that time period, Dr. Brinkerhoff saw Mr. Rolle at least eight times. Mr. Rolle was also seen by Dr. Kurt Johnson, Corizon's Regional Medical Director, Dr. Ilene Choal, Corizon's Dental Care Manager, Dr. Susanne Levene, a Corizon-employed physician, and Brandon Bennion, a nurse practitioner at the Central Wyoming Skin Clinic. Collectively, these providers concluded Mr. Rolle developed an oral infection likely due to a needle stick administered during the tooth extraction. The providers also concluded Mr. Rolle's skin issues were largely

unrelated to the tooth infection or the oral infection.  The oral infection was treated with antibiotics and the skin issues were treated with topical prescription medication.

### B.  Non-commissary shoes and stockings

In December 2018, Dr. Levene approved Mr. Rolle's request to purchase shoes from an outside vendor.  In January 2019, however, Dr. Levene became aware of a new policy, implemented by Michael Pacheco, the warden at WSP, prohibiting inmates from purchasing their own shoes from outside vendors unless the shoes were deemed medically necessary by a medical provider.  Mr. Rolle was subsequently offered, but declined, an appointment with a podiatrist.  He later submitted a "special needs-form" requesting to "purchase medical necessary shoes."  R. vol. 3 at 47.  Frederic Lockwood, a correctional officer at WSP, denied that special needs request.

In March 2019, Dr. Levene approved Mr. Rolle's requests for knee-high anti-embolism stockings.

### C.  Cell inspections and damage to a television

Mr. Rolle was housed in the K Unit during the summer of 2019.  At that time, Sandra Galvin worked as the K Unit Supervisor.  Mr. Rolle alleges that in July 2019, Ms. Galvin forced him, by threat of "write up and going to [the] hole," to be seen in the medical clinic by Dr. Levene.  R. vol. 4 at 229.  Mr. Rolle went to the medical clinic, but refused to talk to Dr. Levene.

Mr. Rolle wrote to Mr. Lockwood, Ms. Galvin's supervisor, and complained about the incident.  Mr. Rolle subsequently met with Mr. Lockwood and Ms. Galvin

on July 19, 2019.  During the meeting, Mr. Lockwood allegedly told Ms. Galvin her conduct had been improper.

Following the meeting, Ms. Galvin allegedly began taking random commissary-purchased items from Mr. Rolle's cell during daily cell inspections. When Mr. Rolle questioned her about the items, Ms. Galvin allegedly stated the items were contraband.  On other unspecified dates, Ms. Galvin allegedly ordered the officers who inspected Mr. Rolle's cell to touch trash, dirty items, dirty clothes, and electronics without changing their gloves.

On two occasions, once in September 2019 and later in October 2019, Mr. Rolle returned to his cell to find his television had been knocked over and other items had been moved during cell inspections.  Mr. Rolle alleges Ms. Galvin was responsible for the television being knocked over and other items being moved. Following the October 2019 search, Mr. Rolle complained to Ms. Galvin. Ms. Galvin later came and confiscated Mr. Rolle's television.

Ms. Galvin wrote a staff report regarding the incident and noted that "[o]n a daily basis Inmate Rolle is complaining about cell inspections being done and he is constantly telling officer's [sic] what inspections are and what searches are." R. vol. 5 at 226 (internal quotation marks omitted).

*D. Living will*

In March 2020, Mr. Rolle "attempted to obtain any WDOC forms for the purpose of filing a Living Will and was denied and found that WDOC does not have any established form in their system for this procedure."  R. vol. 3 at 60.  Mr. Rolle

5

then "created his own Living Will" and attempted to file it "in the appropriate central, medical and Chaplin's [sic] files" with WDOC. *Id.* Mr. Pacheco and other WDOC officials refused to file Mr. Rolle's living will in the WDOC document filing system.

II

In July 2020, Mr. Rolle filed a pro se civil rights action under 42 U.S.C. § 1983 complaining about the above-described incidents. He named as defendants WDOC, eight WDOC employees, Corizon, and five Corizon employees.

Shortly after filing suit, Mr. Rolle moved to recuse the district court judge. That motion was denied.

Mr. Rolle twice amended his complaint. In the operative second amended complaint, Mr. Rolle asserted, in relevant part, Eighth, Fourteenth, and First Amendment claims related to inadequate and delayed medical treatment for a tooth infection, the denial of medically necessary shoes and anti-embolism socks, retaliation for the filing of grievances, damage to his television during a cell search, and his inability to file his living will in the prison's internal files. The district court dismissed some claims as insufficiently pled, for failure to state a claim, or on the basis of Eleventh Amendment and qualified immunity. The district court later granted summary judgment in favor of defendants on the remaining claims and entered final judgment in the case.

6

Mr. Rolle now appeals.

### III

### *A. Denial of motion to recuse*

We begin our review with the denial of Mr. Rolle's motion to recuse. In his motion, Mr. Rolle argued the district judge should recuse herself because she was married to "the ex-governor of Wyoming," who had previously "made direct quotes to multimedia sources . . . voicing his support of the death penalty in a 2007-2008 case" in which Mr. Rolle was a defendant. Supp. R. at 7. The district judge concluded these circumstances did not warrant her recusal under 28 U.S.C. § 455(a).

"We review for abuse of discretion the denial of a motion to disqualify." *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1239 (10th Cir. 2020). "A district judge 'shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'" *Id.* (quoting § 455(a)). Thus, "we ask whether a reasonable person, fully informed of the relevant facts, would question the judge's impartiality." *Id.* (internal quotation marks omitted).

We conclude the district judge did not abuse her discretion in determining that any prior statements made by her husband regarding a previous criminal case involving Mr. Rolle did "not give rise to a reasonable inference of impartiality on [her] part." Supp. R. at 10. As we noted in *Barnett*, "[i]n present-day society we do not treat a married couple as single-minded on public issues." 956 F.3d at 1241. Thus, a reasonable observer would not impute the comments made by the district

judge's spouse to her, nor would they interpret those past comments as giving rise to bias on the part of the district judge.

### B.  The dismissal of certain claims

We next turn to the order dismissing certain claims asserted in the second amended complaint.

### 1)  Claims against Corizon

The first two claims—regarding the alleged failure to treat Mr. Rolle for the tooth infection and the alleged denial of medically-necessary shoes and stockings— implicated Corizon.  Mr. Rolle alleged Corizon officials failed to adequately train and supervise subordinates, failed to develop effective review and reporting of policy violations, failed to discipline malfeasant employees, failed to verify underlying facts, and declined to confirm inferences of risk that were strongly suspected to exist. Corizon argued, and the district court agreed, that the second amended complaint failed to allege any facts indicating that Corizon had an unlawful policy or practice that led to a constitutional violation that injured Mr. Rolle.

We review de novo a district court's dismissal of a complaint for failure to state a claim.  *Silver v. City of Albuquerque*, 134 F.4th 1130, 1133 (10th Cir. 2025). "In doing so, we ask whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks and brackets omitted).

As the district court correctly noted, a private corporation performing a governmental function "cannot be held liable under § 1983 on a respondeat superior

8

theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (addressing municipal liability); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (applying same principles to claims against private corporations). Instead, the plaintiff typically must show that an official "policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). Where, as here, a plaintiff attempts to proceed on a "'failure to train' theory of liability, . . . a pattern of similar constitutional violations by untrained employees is ordinarily necessary" to impose municipal or corporate liability. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019). In other words, failure to train or supervise can "constitute an official policy" only "if the plaintiff meets the stringent deliberate indifference standard of fault." *Id.* at 1284 (internal quotation marks omitted).

After reviewing the second amended complaint, we agree with the district court that Mr. Rolle failed to allege any pattern of similar constitutional violations by untrained Corizon employees. We therefore conclude the district court did not err in dismissing Mr. Rolle's claims against Corizon.

*2) Claims against WDOC*

Claims One, Two, and Four (which involved the refusal to file Mr. Rolle's living will) asserted similar failure-to-train claims against WDOC. The district court concluded that, like Mr. Rolle's claims against Corizon, these claims were conclusory and subject to dismissal.

9

We agree.  As the district court noted, the second amended complaint "provides no specific allegations, nor do the allegations give rise to any inference that the alleged deficient supervisory practices were so gross or so pervasive that they can justifiably be said to represent [WDOC] policy or custom."  R. vol. 3 at 138.

3) *Claims of supervisory failures or deficiencies on the part of individual defendants*

The second amended complaint asserted nearly identical claims of "fail[ure] to adequately train and supervise subordinates," "fail[ure] to develop effective review and reporting of policy violations," "fail[ure] to discipline malfeasant employees," "refus[al] to verify underlying facts," and "declin[ation] to confirm inferences of risk that w[ere] strongly suspected to exist" against nine individual defendants who worked for either WDOC or Corizon.[1]  R. vol. 3 at 137 (internal quotation marks omitted).

For any of these allegations to give rise to a valid § 1983 claim, Mr. Rolle would have had to allege, in part, that the named defendants were "policymaking officials" or that the alleged practices were "so persistent and widespread as to practically have the force of law."  C*onnick v. Thompson*, 563 U.S. 51, 61 (2011).  He also would have had to allege that the named defendants acted with deliberate

---

[1] The individual defendants included Dr. Choal (Claim One), Ms. Podlacha (Claims One and Two), Ms. Mathews (Claim One), Mr. Martin (Claim One), Ms. Mayer (Claims One and Two), Mr. Lockwood (Claim Two), Ms. Dillon (Claims Three and Four), Mr. Pacheco (Claims One through Four), and Mr. Lampert (Claims One through Four).

10

indifference to the known or obvious consequences of their actions or inactions. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).

As the district court concluded, however, Mr. Rolle's allegations fell short. We agree with the district court that Mr. Rolle "offer[ed] no specific allegations regarding any supervisory deficiencies" on the part of these defendants, "much less any allegations describing how WDOC or Corizon employee supervision or failure to discipline was inadequate, or how any potential inadequacy caused [him] injury." R. vol. 3 at 138-39. In addition, Mr. Rolle failed to sufficiently allege the defendants acted with deliberate indifference. Lastly, to the extent Mr. Rolle's allegations of "failure to verify facts and confirm inferences of risk" could be construed as a failure-to-investigate theory of liability, we agree with the district court that he "provide[d] no specific allegations of WDOC's or Corizon's allegedly inadequate investigation of, or inquiry into the facts or risks." *Id.* at 139.

### 4) Claims One and Two against Ms. Mathews

Claim One alleged that Ms. Mathews, an accreditation/medical compliance specialist employed by WDOC, "had full knowledge of" Mr. Rolle's "serious medical conditions," but lied to Mr. Rolle's family, "false[ly] report[ed] delayed adequate treatment," and "refused to provide a suitable . . . post-deprivation remedy." R. vol. 3 at 43. Ms. Mathews moved to dismiss the claim, arguing there were "no allegations or inferences supporting any causal connection between the so-called lie or false report and the alleged violation of [Mr. Rolle's] Eighth and Fourteenth Amendment[]" rights. *Id.* at 140. The district court granted Ms. Mathews' motion,

11

noting Mr. "Rolle offer[ed] no cogent allegation or argument by response brief or otherwise to support his allegation that whatever lie or false report he believe[d] [Ms.] Mathews made caused or contributed to his alleged constitutional violations." *Id.* at 141. The district court also rejected Mr. Rolle's arguments in his response brief that Ms. Mathews was somehow responsible for the constitutional violation alleged in Count Two of the second amended complaint (involving the non-commissary shoes and anti-embolism stockings).

After reviewing the appellate briefs and the record on appeal, we find no error on the part of the district court and therefore affirm the district court's dismissal of the claims against Ms. Mathews.

*5) Claim Two against Mr. Lockwood and Mr. Pacheco*

In Claim Two, Mr. Rolle alleged that Mr. Lockwood and Mr. Pacheco, both WDOC employees, denied his request to purchase non-commissary shoes and anti-embolism stockings and also interfered with his treatment by convincing medical providers to change their diagnoses. Mr. Lockwood and Mr. Pacheco moved to dismiss and the district court granted their motion. The district court concluded Mr. Rolle's "general allegations" against Mr. Lockwood and Mr. Pacheco "fail[ed] to state a claim that these State defendants knew of a serious medical condition and acted with deliberate indifference in denying [his] request notwithstanding such knowledge." *Id.* at 142. The district court also concluded that "as to whether or if either . . . defendant interfered with [Mr. Rolle's] treatment, there [wa]s nothing to indicate who did what, when and how." *Id.*

12

After reviewing the briefs and record on appeal, we agree with the district court's analysis and affirm its decision to dismiss these claims against Mr. Lockwood and Mr. Pacheco.

### 6) Claim Three – cell searches and damaged television

Claim Three alleged that Ms. Galvin violated Mr. Rolle's rights by searching his cell on a daily basis and damaging or removing his personal property, all in retaliation for him complaining about her to her supervisor, Mr. Lockwood. Ms. Galvin moved to dismiss Claim Three, arguing Mr. Rolle "fail[ed] to allege facts sufficient to show that 'but for' [her] retaliatory motive, the searches would not have happened." *Id.* at 143. Ms. Galvin also argued that the one alleged instance of a cell search and a damaged television failed to show retaliatory motive on her part. The district court dismissed Claim Three against Ms. Galvin in her official capacity, but concluded Claim Three otherwise "sufficiently pled" a claim against Ms. Galvin in her individual capacity. *Id.*

We conclude the district court properly dismissed Claim Three to the extent it was asserted against Ms. Galvin in her official capacity. As the district court aptly noted, nothing in the second amended complaint could reasonably be read as alleging Ms. Galvin was acting in her official capacity when she allegedly retaliated against Mr. Rolle. Moreover, even if we were to assume Ms. Galvin was acting in her official capacity, that would effectively amount to a claim against WDOC and, for the reasons already discussed, we conclude Claim Three would have failed to state a valid claim for relief against WDOC.

13

*7) Claim Four – living will*

Claim Four alleged that Mr. Pacheco violated Mr. Rolle's constitutional rights, as well as his rights under the Patient Self-Determination Act (PSDA) and the Religious Land Use and Institutionalized Persons Act (RLUIPA), by refusing to file his living will in WDOC's files. The district court concluded the claim failed to allege a violation of Mr. Rolle's First Amendment rights because there was no allegation that Mr. Pacheco's refusal substantially burdened Mr. Rolle's "right to practice Christianity, including his belief that life should not be artificially extended." *Id.* at 146. The district court therefore dismissed Mr. Rolle's First Amendment claim asserted under § 1983. The district court also concluded the second amended complaint "fail[ed] to allege any deprivation of liberty without due process." *Id.* at 147. The district court in turn concluded the PSDA was inapplicable because WSP was not a "provider of services" within the meaning of 42 U.S.C. § 1395cc(e). *Id.* Lastly, the district court concluded Mr. Rolle failed to state a claim under the RLUIPA because he failed to allege that Mr. Pacheco's actions placed a substantial burden on his exercise of his religion.

Mr. Rolle does not seriously challenge the district court's rulings on any of these claims. We have also conducted our own independent review of the allegations contained in Claim Four and agree entirely with the district court's analysis. Consequently, we affirm the district court's rulings.

## C. The grant of summary judgment

That leaves the district court's orders granting summary judgment in favor of defendants on the remaining claims asserted in the second amended complaint. "We review a district court's grant of summary judgment de novo. In doing so, we stand in the same shoes as the district court and must view the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Johnson v. Sanders*, 121 F.4th 80, 88 (10th Cir. 2024) (citation and internal quotation marks omitted).

### 1) Claim One

Claim One alleged Dr. Brinkerhoff, Dr. Choal, Dr. Johnson, Dr. Levene, and Ms. Podlacha violated Mr. Rolle's Eighth Amendment rights. More specifically, Claim One alleged that: (a) the dental and medical care Mr. Rolle received at WSP led to a skin infection that was not appropriately or timely treated; (b) Mr. Rolle was subjected to a forced medical encounter by two providers; and (c) Mr. Rolle was denied the opportunity to order special non-commissary shoes and knee-high stockings, which he asserts were medically necessary.

### a) Dental and medical care

The district court granted summary judgment in favor of Dr. Brinkerhoff and Dr. Johnson as to Mr. Rolle's Eighth Amendment claims against them regarding their provision of dental and medical care. In doing so, the district court concluded the record was undisputed that these defendants provided "ongoing attention" to Mr. Rolle's "dental and medical needs." R. vol. 5 at 247. It further noted that

Mr. "Rolle provide[d] no basis for his opinion that Dr. Brinkerhoff's care spread the pre-existing infection, or that the infection spread from inside his mouth to his body, or that either [Dr. Brinkerhoff or Dr. Johnson] ignored or mis-treated his complaints." *Id.* Lastly, the district court noted that "[w]hile [Mr. Rolle] disagree[d] with the care and treatment he received from [Dr.] Brinkerhoff and [Dr.] Johnson, disagreement d[id] not state a constitutional violation by" those defendants. *Id.*

The district court also granted summary judgment in favor of Dr. Choal as to the same claim. The district court noted it was undisputed that Dr. "Choal saw [Mr.] Rolle one time and diagnosed him as being in the healing stages of an infection." *Id.* at 248. The district court concluded Mr. Rolle's "arguments against [Dr.] Choal's motion for summary judgment simply lump[ed] [Dr.] Choal in with his complaints about [Dr.] Brinkerhoff and [Dr.] Johnson," and that "[t]his [wa]s insufficient to raise any dispute of fact or rebut [Dr.] Choal's arguments." *Id.*

As for Ms. Podlacha, the district court noted Mr. Rolle did "not advance any facts or arguments" in response to her portion of the motion for summary judgment and therefore "confessed this portion of the motion." *Id.*

Lastly, the district court concluded Dr. Levene was entitled to summary judgment as to Claim One because Mr. Rolle's claims against her were "difficult to discern" and, to the extent Mr. Rolle was "unhappy that the folliculitis diagnosis was not communicated to [Mr.] Bennion," there was no evidence Dr. Levene "had any responsibility to communicate any records to [Mr.] Bennion (or that she refused to do

16

so),” and that, in any event, Mr. Bennion “conducted h[is] own assessment” of Mr. Rolle “and issued h[is] own diagnosis.” *Id.* at 249.

Mr. Rolle argues on appeal that the district court “applied a blanket bias to [his] claim of deliberate indifference” against these defendants. Aplt. Br. at 14. He also asserts, in conclusory fashion, that his “facts . . . met both the objective and subjective analysis” necessary to state a valid Eighth Amendment claim. *Id.* Finally, he argues that “Defendants were manipulating the medical records of actual conditions and withholding medical facts and now the District Court is doing it for the Defendants.” *Id.* at 4.

We reject these arguments as completely unsupported by any evidence in the record or any legal authorities. There is no evidence whatsoever of bias on the part of the district court in ruling on the defendants’ dispositive motions. As for Mr. Rolle’s Eighth Amendment claims, our own independent review of the record leads us to the same conclusions as the district court, i.e., there is no evidence that would allow a reasonable finder of fact to conclude that defendants were deliberately indifferent to Mr. Rolle’s serious medical needs. Consequently, we affirm the district court’s grant of summary judgment on these claims.

*b) Forced medical encounter*

Mr. Rolle alleged Ms. Podlacha forced him to attend a medical appointment with Dr. Levene in April 2018. The district court concluded Mr. Rolle failed to exhaust his administrative remedies with respect to this claim and granted summary judgment in favor of Ms. Podlacha and Dr. Levene.

17

To the extent Mr. Rolle is appealing the district court's decision,[2] we find no error. Like the district court, we have found no evidence in the record indicating that Mr. Rolle filed a grievance complaining about the alleged forced medical encounter.

*2) Claim Two - non-commissary shoes and TED stockings*

Mr. Rolle alleged in Claim Two that Dr. Levene changed her medical diagnosis in order to deny him the right to order non-commissary shoes. He also alleged he was denied access to TED stockings or ACE wraps after May 2018.

The district court granted summary judgment in favor of Dr. Levene on this claim. The district court noted it was unable to "locate any grievance requesting TED hose or ace wraps" and thus concluded that Mr. Rolle failed to exhaust his remedies for this part of his claim. As for the portion of the claim regarding non-commissary shoes, the district court noted, in relevant part, that Mr. Rolle failed to identify any record indicating "a physician . . . mandated special shoes as medically necessary treatment for his condition, or that a lay person would easily recognize the need for either a doctor's attention to his lower left leg or ankle or the need for special shoes." R. vol. 5 at 251. The district court also noted Mr. Rolle "refused to see a podiatrist" and "stated he didn't want to see one." *Id.* The district court therefore concluded, based on "these undisputed facts," that Mr. Rolle failed to "establish deliberate indifference to a serious medical need by [Dr.] Levene." *Id.*

---

[2] At one point in his opening brief, Mr. Rolle asserts that "[t]he forced medical encounters are not part of [his] complaint," but instead were "provided as facts that support" his other claims against "WDOC and Corizon." Aplt. Br. at 3.

Mr. Rolle discusses this claim in his opening appellate brief, but fails to offer any arguments that would cause us to question the district court's analysis of the claim. Like the district court, we agree that Mr. Rolle has failed to present evidence sufficient to allow a jury to find that Dr. Levene was deliberately indifferent to Mr. Rolle's serious medical needs.

### 3) Claim Three – cell searches and damage to property

In Claim Three, Mr. Rolle alleged that Ms. Galvin violated his First Amendment rights by retaliating against him for complaining to her supervisor. He alleged the retaliation included turning cell inspections into searches, damaging and confiscating his television, and interfering with his prison jobs.

The district court concluded all but one of these allegations were unexhausted. More specifically, the district court concluded "[t]he only [filed] grievance relating to [Ms.] Galvin [wa]s the grievance about damage to [Mr.] Rolle's television during a cell inspection." *Id.* at 229 (citing ECF 255-8 at 10).

The district court in turn concluded Ms. Galvin was entitled to qualified immunity as to the single exhausted claim. The district court noted Mr. Rolle failed to "identify any on-point Tenth Circuit authority which clearly establishe[d] that [Ms.] Galvin's action on October 23, 2019, which allegedly led to the damage and confiscation of [Mr.] Rolle's television, violated his First Amendment rights." *Id.* at 230. The district court also concluded that "[c]ell searches and the potential for damage to personal property [are] normal condition[s] of confinement." *Id.* at 231. As for the related Eighth Amendment claim (i.e., that Ms. Galvin violated

19

Mr. Rolle's Eight Amendment rights by damaging and confiscating his damaged television, thereby depriving Mr. Rolle of the ordinary incidents of prison life), the district court concluded Mr. Rolle failed to "identify any on-point Tenth Circuit authority which clearly establishe[d] that he was deprived of a protected property interest in the prison conditions setting when [Ms.] Galvin confiscated his damaged television." *Id.*

We agree with the district court's qualified immunity analysis and affirm its grant of summary judgment in favor of Ms. Galvin. *See Tachias v. Sanders*, 130 F.4th 836, 842 (10th Cir. 2025) (discussing application of qualified immunity in the context of a First Amendment retaliation claim); *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (discussing elements of a First Amendment retaliation claim). Like the district court, we conclude Mr. Rolle has failed to show the law was clearly established when Ms. Galvin allegedly acted. *See Luethje v. Kyle*, 131 F.4th 1179, 1187 (10th Cir. 2025) ("Asserting the affirmative defense of qualified immunity creates a presumption that the defendant is immune from suit. A plaintiff overcomes this presumption only by showing (1) the defendant's actions violated a constitutional right, and (2) the right was clearly established at the time of the violation." (citation and internal quotation marks omitted)).

IV

The judgment of the district court is affirmed.  Mr. Rolle's motion to supplement the record on appeal is granted.  Mr. Rolle's other pending motions are denied as moot.

Entered for the Court

Allison H. Eid
Circuit Judge