**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 23, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GERALD SILVER, on behalf of himself
and others similarly situated,

    Plaintiff - Appellant,

v.

CITY OF ALBUQUERQUE,

    Defendant - Appellee.

No. 23-2058

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:22-CV-00400-MIS-GBW)**
_____

Carter B. Harrison, IV, Harrison & Hart, LLC, Albuquerque, New Mexico for Plaintiff-Appellant.

Cerianne L. Mullins (Mark T. Baker, with her on the brief), Peifer Hanson Mullins & Baker, P.A., Albuquerque, New Mexico, for Defendant-Appellee.
_____

Before **MATHESON**, **KELLY**, and **EID**, Circuit Judges.
_____

**EID**, Circuit Judge.
_____

In 2022, Gerald Silver brought a putative class action against the City of

Albuquerque alleging that the City violated the Telephone Consumer Protection Act

(the "TCPA"), 47 U.S.C. § 227 *et seq.*, when it made pre-recorded phone calls

inviting its residents to attend virtual town hall meetings during the COVID-19 pandemic. The City moved to dismiss Silver's claim on two grounds: First, the City argued it was not subject to the TCPA because it was not a qualifying "person" under the statute; and second, the City contended that, even if it was subject to the TCPA, the calls fell under the TCPA's exception for calls made for emergency purposes. The district court granted the motion, and Silver timely appealed.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's dismissal of Silver's claim. Even assuming the TCPA applies to local governments, Silver's complaint does not state a claim upon which relief can be granted. Although the TCPA generally prohibits the use of robocalls, *see* 47 U.S.C. § 227 *et seq.*, it excepts from coverage "calls made necessary in any situation affecting the health and safety of consumers," 47 C.F.R. § 64.1200(f)(4). And because the City made the calls to inform citizens that town hall meetings would be held virtually—a circumstance "made necessary" by the social-distancing requirements of the COVID-19 pandemic—the calls fall squarely within that exception.[1]

## I.

During the COVID-19 pandemic, Albuquerque—like most cities—found itself grappling with the question of how to conduct city operations in a socially distanced society. One of the City's solutions was to host virtual town halls, which residents

---

[1] Because we conclude that the City's calls fall within the TCPA's emergency purposes exception, we need not determine whether local governments qualify as persons under that statute.

could access via landline, mobile device, or the internet.  Silver alleges that the City

held at least sixteen virtual town halls between March 23, 2020, and May 19, 2022.[2]

The City made robocalls to its residents, as designated by the (505) area code, that

informed them about the virtual town halls.  Silver's complaint alleges that he

received "at least seven prerecorded voice calls from the City on his cell phone"

about the town halls.  Aplt. App'x at 19.  The seven calls occurred on the following

dates: June 8, 2020; July 15, 2020 (two calls); October 20, 2020; October 21, 2020;

December 1, 2020; and December 2, 2020.  He also alleges the City made a call on

May 13, 2020, though he does not specify that he received the call.  The texts of two

of the calls read as follows:

> Hi.  This is Mayor Tim Keller, inviting you to join a live town hall
> tomorrow, Thursday, at 7:30 pm.  I'll be providing an update on the next

---

[2] Silver filed two opposed motions for judicial notice asking this Court to recognize additional virtual town hall meetings that allegedly occurred after May 19, 2022.  First Mot. for Judicial Notice at 1–2 (July 11, 2023); Second Mot. for Judicial Notice at 1–2 (Dec. 13, 2024).  He also asks this Court to recognize local and federal declarations that the COVID-19 emergency concluded in 2023.  First Mot. for Judicial Notice at 1–2 (July 11, 2023).  Finally, he asks this Court to take judicial notice of a second lawsuit he filed on December 11, 2024, in which he and other plaintiffs allege they received additional robocalls after this lawsuit was filed in 2022.  Second Mot. for Judicial Notice at 1–2 (Dec. 13, 2024).  Because these facts were not before the district court at the time it made its ruling, and because they are not relevant to the resolution of this appeal, we deny both motions.  *See Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1549 n.1 (10th Cir. 1992) (declining to review the complaint of a new lawsuit filed during the pendency of the original appeal because it was not before the district court at the time the original ruling was made); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 392 n.7 (9th Cir. 2000) ("It is rarely appropriate for an appellate court to take judicial notice of facts that were not before the district court."); *see also Magnum Foods, Inc. v. Continental Casualty Co.*, 36 F.3d 1491, 1502 n.12 (10th Cir. 1994) ("[O]ur review of a grant of summary judgment is limited to the record before the trial court at the time it made its ruling." (citation omitted)).

phase of recovery for the City of Albuquerque and take questions live. It's at 7:30 tomorrow and you'll receive a call just like this one, and, to participate in the town hall, just stay on the line. There's no cost to join the call. And you can also sign up for the telephone town hall and other events by visiting cabq.gov/townhall. For immediate questions or assistance, please check out that same website or call 311. Hope to see you tomorrow.

*Id.* at 17 (May 13, 2020 call).

Hi, there. I'm calling from Mayor Tim Keller's office to invite you to our live telephone town hall tomorrow at 12:00 pm. At that time, you will receive a call like this one, inviting you to participate. There is no cost to join. Simply stay on the line at that time. This is your chance to hear directly from Mayor Keller and City leaders—to ask your questions. To register, visit cabq.gov/townhall or call 311.

*Id.* at 21 (December 2, 2020 call). Both parties agree that the remaining calls were

"substantially similar" to those detailed above. *See* Aplt. Br. at 25. Further, the

parties agree there was no commercial purpose to the calls. And neither party

disputes that, during the period in which the eight specified calls were made, the

federal government, the State of New Mexico, and the City of Albuquerque had all

declared a state of public health emergency relating to COVID-19.[3]

On May 26, 2022, Silver filed a putative class action in the District of New

Mexico. The City sought to dismiss the case, arguing that (1) the City is not a person

under the TCPA and (2) the robocalls fall under the emergency purposes exception.

On March 8, 2023, the district court granted the City's motion to dismiss. The

district court declined to reach the City's argument about whether it was subject to

---

[3] The district court took judicial notice of the status of the COVID-19 pandemic at the time of the relevant calls. Neither party takes issue with this ruling on appeal.

4

the TCPA, and instead concluded that the robocalls properly fit an emergency

purpose.  Silver appealed.

## II.

We review de novo the district court's dismissal of a complaint for failure to

state a claim.  *Serna v. Denver Police Dep't.*, 58 F.4th 1167, 1169 (10th Cir. 2023).

In doing so, we ask whether the complaint "contain[s] sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Brown v.*

*City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)).  "Although the court must accept the truth of all properly

alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff

'must still nudge the claim across the line from conceivable or speculative to

plausible.'"  *Id.* (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281

(10th Cir. 2021)).

Silver's complaint does not pass muster.  To begin, several of Silver's claims

are not sufficiently pled.[4]  And those that are do not show a violation of the TCPA.

The TCPA provides:

---

[4] To state a claim under the TCPA, a plaintiff must allege that the defendant
(1) called the plaintiff's cellular telephone (2) using an automatic telephone dialing
system and (3) the plaintiff had not given prior express consent to receive the call.
*See Hossfeld v. Gov't Emps. Ins. Co.*, 88 F. Supp. 3d 504, 509 (D. Md. 2015);
*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1300 (D. Nev. 2014);
*Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1195 (M.D. Fla. 2014).
Silver alleges seven calls with specificity—all occurring between June 2020 and
December 2020—but in passing references calls that took place after the City had
removed social-distancing restrictions, up until May 19, 2022.  He argues that these

> It shall be unlawful for any person within the United States . . . to make any call (*other than a call made for emergency purposes* or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

The TCPA does not define "emergency purpose." But the COVID-19 pandemic plainly "constitutes an 'emergency.'" *In re Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 35 F.C.C. Rcd. 2840, 2840 (2020); *see In re Matter of the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 2736, 2738 (1992) (interpreting "'emergency' to include situations in which it is in the public interest to convey information to consumers concerning health or safety, whether or not the event was anticipated or could have been anticipated"); *Gabertan v. Walmart, Inc.*, 523 F. Supp. 3d 1254, 1257–59 (W.D. Wash. 2021) (same); *Horton*

---

later calls cannot fall under the TCPA's emergency purposes exception because the City no longer imposed official social-distancing measures at that time.

But Silver does not allege in his complaint that he received any robocalls from the City after December 2020, or that such calls were ever placed to his cell phone. Rather, Silver's complaint states only that the City "has put on at least 16 virtual town halls. The first was held on March 23, 2020 and the most recent on May 19, 2022" and that on the days "immediately preceding each of the virtual town halls, the City publicized the events by using" robocalls. Aplt. App'x at 6–7. Because Silver does not allege that he received the robocalls or that they were made to his cellular telephone, any argument that the calls violated the TCPA is purely speculative. We cannot adjudicate the merits of such speculative calls and decline to engage with Silver's arguments that rely on the period after the seventh call—December 2, 2020. *See supra* at 3 n.2. The calls we are left with all occurred in 2020, when the COVID-19 pandemic was in its first year.

*v. Tarrant Cnty. Hosp. Dist.*, 2022 WL 702536, at *2 (N.D. Tex. Feb. 4, 2022) (same). "[C]onsequently, hospitals, health care providers, state and local health officials, and other government officials may lawfully communicate information about the novel coronavirus as well as mitigation measures without violating federal law." *In re Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 35 F.C.C. Rcd. at 2840.

Of course, not all phone calls made during the COVID-19 pandemic fall under the emergency purposes exception. The caller must be "from a hospital, or be a health care provider, state or local health official, or other government official [or] a person under the express direction of such an organization and acting on its behalf." *Id.* at 2841. Further, "the content of the call must be solely informational, made necessary because of the COVID-19 outbreak, and directly related to the imminent health or safety risk arising out of the COVID-19 outbreak." *Id.*

This two-step inquiry can be boiled down to (1) context and (2) content. For example, a call made by a county official to inform residents of "shelter-in-place requirements, quarantines, medically administered testing information, or school closures necessitated by the national emergency" would be appropriate because it is informational, made necessary by the pandemic, and directly related to the risks associated with the pandemic. *Id.* at 2842. Conversely, a robocall advertising home test kits or a cleaning service—even if related to COVID-19—would not be appropriate due to its commercial purpose. *Id.*

7

Here, because the caller was a local government official, the "context" prong of the emergency-purposes-exception inquiry is satisfied. The "content" prong is also satisfied. Each of the City's calls was informational; neither party argues that the calls were intended to market a product or had any other commercial purpose. Further, the City made the calls to explain to residents that the town halls were virtual, and the town halls were virtual because of the social-distancing requirements of the pandemic. Thus, the calls were both made necessary by the COVID-19 outbreak and directly related to the risks associated with the pandemic.

Silver urges us to divorce the virtual nature of the town halls from the public health emergency because "individuals receiving the City's robocalls could have no expectation that the town halls were ever supposed to be anything but virtual." Aplt. Br. at 34. But in the same breath, Silver acknowledges that the City introduced scheduled virtual town halls for the first time "when public gatherings were restricted." *Id.* While we draw all reasonable inferences in Silver's favor at this stage, we must also "draw on [our] judicial experience and common sense." *Iqbal*, 556 U.S. at 679. We cannot ignore the rapidly evolving nature of the COVID-19 pandemic in its early days and its profound impact on people, businesses, and governmental operations. *See McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1139 (10th Cir. 2023) (discussing the "unprecedented challenges" that occurred "as the nation fell into the grip of the COVID-19 pandemic"). Common sense supports the conclusion that the City introduced virtual town halls at the start of the pandemic because in-person forums were not safe, and, despite those difficult circumstances,

8

the City still needed to engage in its traditional operations, including disseminating information to the public in a format in which the public could engage. The calls were, in effect, informing citizens about a social-distancing measure that was taken in response to the pandemic because the virtual nature of the town hall *was* the social-distancing measure. And as previously noted, government officials may "lawfully communicate information about the novel coronavirus *as well as mitigation measures* without violating federal law." *In re Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 35 F.C.C. Rcd. at 2840 (emphasis added). Because a virtual town hall meeting is itself a mitigation measure, any communications regarding those town hall meetings satisfy the content prong of the emergency purposes exception.

Silver makes several additional arguments, none of which is persuasive. He first argues that the calls do not fall within the exception because they were made "without regard to whether they were relevant to the called parties." Aplt. Br. at 18. He contends that, because he had not expressed a desire to attend the town hall meetings, the phone calls were not relevant to him. But the emergency purposes exception does not require that the calls be tailored to an individual's preferences; rather, the calls must relate to a "*bona fide* emergency that is relevant to the called party." *In re Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 9054, 9063 n.76 (2016) ("*Blackboard*").

Here, the emergency was the pandemic—not the town hall meetings. *Gabertan*, 523 F. Supp. 3d at 1261 (dismissing a plaintiff's claim—that a pharmacy's

9

text messages about contactless prescriptions violated the TCPA because the plaintiff's prescriptions were optional, and thus he was not a relevant party—because the "emergency was the pandemic, not the content of the prescription"). And the pandemic—along with any associated mitigation measures—was relevant to all City residents. Without notice to the contrary, the City could reasonably infer that its residents would desire to attend a local town hall—particularly in a time of great uncertainty regarding social distancing, business closures, testing availability, etc.—and thus would be affected by mitigation measures taken regarding the town hall. Thus, the City's limitation of the phone calls to the Albuquerque area code was appropriately tailored to the relevant parties. *See Blackboard*, 31 F.C.C. Rcd. at 9063 n.76 (explaining that "calls about school closings, which we have already noted as a scenario that constitutes an emergency, would be relevant to parents or guardians of students or 'other members of the school community'" (quotation omitted)).

Silver next argues that there were less intrusive means for the City to inform residents about the town halls, or, in the alternative, that the City's calls could not have related to COVID-19 because they did not explicitly mention COVID-19. *See* Aplt. Br. at 27. He claims that the City's failure to mention COVID-19 in the robocalls makes the calls more akin to "parent-teacher conference and debt collection call examples," which are not permitted under the emergency purposes exception, rather than, for example, calls about snow-day closures, which are permitted. *Id.*

Silver's argument fails for two reasons. First, the TCPA does not require calls to use specific words to invoke the protection of the emergency purposes exception.

Nor does it instruct that a caller must use the least intrusive means available. We cannot imagine that a pre-recorded call about a snow-day closure would be permissible if it stated that "the school will be closed today due to weather" but would be impermissible if it stated only that "the school will be closed today" while a blizzard raged outside. Second, Silver's comparisons of the City's robocalls to parent-teacher conference calls and debt-collection calls are inapposite because those calls do not relate to an emergency. *See Blackboard*, 31 F.C.C. Rcd. at 9063 ("[A]utodialed or prerecorded calls made for purposes that do not affect health and safety concerns fail to qualify as calls made for an emergency purpose"). The City's robocalls are comparable to weather-closure calls because they informed recipients of a measure being taken in response to an emergency—even if the calls did not always explicitly mention the pandemic.

Silver finally argues that the robocalls violate the TCPA because the content of the virtual town halls did not always concern COVID-19. We need not address this argument in depth. The content of the calls relayed a mitigation measure in response to the pandemic. The virtual nature of the town halls was thus the mitigation measure. While it is likely that the town halls discussed COVID-19, given that the pandemic affected virtually every aspect of life, the content of the town halls is irrelevant to our analysis of whether the calls fall under the emergency purposes exception.

### III.

For the reasons stated above, we AFFIRM the district court's decision.