**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**February 27, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

THOM HOLLIS, individually and on
behalf of others similarly situated,

     Plaintiff - Appellant,

v.

FARM BUREAU PROPERTY &
CASUALTY INSURANCE COMPANY,

    Defendant - Appellee.

No. 25-2059
(D.C. No. 1:24-CV-00720-WJ-GJF)
(D.N.M.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HARTZ**, **KELLY**, and **TYMKOVICH**, Circuit Judges.
_____

Plaintiff-Appellant Thom Hollis filed a class action lawsuit against his insurer,

Defendant-Appellee Farm Bureau Property & Casualty Co. on June 11, 2024.  Aplt. App.

6–46.  Farm Bureau removed the action to federal court and the district court dismissed it

on limitations grounds.  Id. at 189–204.  Mr. Hollis unsuccessfully moved to alter or

amend the judgment.  Id. at 226–27.  On appeal, Mr. Hollis contends that (1) he pled

sufficient facts to invoke equitable tolling, (2) Farm Bureau's alleged fraud was not

reasonably discoverable until disclosure occurred years later in related litigation, (3)

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

development of a factual record is required where fraud is alleged, and (4) the district court failed to properly apply New Mexico law.  Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

## Background

The parties are familiar with the facts and we need not restate all of them here. Briefly, Mr. Hollis claimed that Farm Bureau improperly collected multiple premiums for Uninsured Motorist and Underinsured Motorist (UM/UIM) coverage and failed to adequately disclose it, thereby rendering his rejection of stacked coverage ineffective and entitling him to stacked coverage[1] and/or a premium refund for illusory coverage.  Aplt. Br. at 14.  He relies upon Montano v. Allstate Ins. Indem. Co., 92 P.3d 1255, 1260 (N.M. 2004), which held that "an insurance company should obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision."  The case also contained an illustration on how this might be done such that "insureds will know exactly what coverage they are receiving and for what cost."  Id. at 1261.  In his complaint, Mr. Hollis claimed violations of New Mexico's Unfair Trade Practices Act (UPA), Unfair Insurance Practices Act (UIPA), negligence, breach of the covenant of good faith and fair

---

[1] The term "stacking" in the UM/UIM context "refers to an insured's attempt to recover damages in aggregate under more than one policy or [as here] one policy covering more than one vehicle until all damages either are satisfied or the total policy limits are exhausted."  Morro v. Farmer's Ins. Grp., 748 P.2d 512, 513 (N.M. 1988).

2

dealing, negligent misrepresentation, and unjust enrichment, and sought declaratory, injunctive, and monetary relief. Aplt. App. 21–34.

Mr. Hollis relied upon a 2020 policy declarations page and a UM/UIM Selection/Rejection Form attached as exhibits to the complaint. Compl. ¶¶ 14–21, id. at Ex. 2, at 1–2 (Aplt. App. 8–9, 41–42). He alleged that although the policy declarations page contained a single premium for each vehicle, the premium listed was actually the total of separate premiums for various coverages including a separate premium for UM and also for UIM coverage. Id. ¶¶ 22–25 (Aplt. App. 9–10). According to Mr. Hollis, he paid for seven vehicles and fourteen coverages (for UM/UIM) yet would not have received stacking given his purported rejection of it. Id. ¶¶ 36–37 (Aplt. App. 12). Mr. Hollis also alleged that the policy, the declarations page and the selection/rejection form are ambiguous and did not adequately inform him of UM/UIM coverage options, notwithstanding that Farm Bureau offered him stacked coverage at roughly three times the amount of non-stacked coverage. Id. ¶¶ 37–40 (Aplt. App. 12), id. at Ex. 2, at 1 (Aplt. App. 41); see generally Hawley v. Farm Bureau Prop. & Cas. Co., 840 F. App'x 354 (10th Cir. 2021). Mr. Hollis does not allege that he was ever involved in an accident with an uninsured or underinsured motorist or ever made a claim for UM/UIM coverage. Aplt. App. 190.

The policy documents attached and referenced in the complaint were from 2020. Id. at 36–42. The district court queried whether Mr. Hollis's 2013 selection/rejection

3

form was incorporated by reference.[2]  Id. at 152.  The complaint indicated that the first policy was issued in 2013 and alleged that Farm Bureau had been overcharging Mr. Hollis since then.  Compl. ¶¶ 10–12 (Aplt. App. 7–8); Aplt. Br. 2.  Mr. Hollis signed similar selection/rejection forms in 2017 and 2020.  Aplt. App. 156.  In the event that the first stacking rejection occurred in 2013, the district court requested further briefing on whether the action was time barred or tolling applied.  Id. at 153–54.

Mr. Hollis's response was straightforward: the first rejection of stacked coverage occurred in 2013, but claims relating back to this initial rejection were not time barred because of Farm Bureau's fraud which was discovered through discovery in other lawsuits.  Id. at 179.  Mr. Hollis argued that the complaint alleged affirmative conduct on the part of Farm Bureau to conceal the alleged conduct and as a result, the court should apply equitable tolling as a matter of law.  Id. at 181.  He also argued that the district court should apply New Mexico law as would the state court.  Id. (citing Gaston v. Hartzell, 549 P.2d 632 (N.M. Ct. App. 1976)).  According to Mr. Hollis, "[w]ithout the legal guidance of his attorneys, Mr. Hollis and likeminded lay people, would never come to understand the deficiencies in Defendant's offers of complicated insurance coverages."

---

[2] Mr. Hollis does not challenge applying the incorporation-by-reference doctrine to the 2013 policy documents.  A court may consider a document not attached to or referred to in a complaint in deciding a motion to dismiss where the document is central to the plaintiff's claims and is indisputably authentic. GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384–85 (10th Cir. 1997).

Id.  Finally, he observed that "whether a plaintiff should have discovered the basis of his suit . . . does not lend itself to determination as a matter of law."  Id. at 182.

Upon receipt of the supplemental briefing, the district court determined that the action was time barred.  Id. at 189–204.  The district court concluded that the claim accrued in 2013, id. at 195, and that New Mexico law does not require a new rejection for each policy period, id. at 194–95; see also N.M. Stat. Ann. 66-5-301(C) (2025).  The district court also concluded that equitable tolling did not apply because no allegations suggested fraudulent concealment, and Mr. Hollis did not lack the means to discover the harm.  Aplt. App. 198.

Mr. Hollis then filed a motion to alter or amend judgment on the grounds that the district court misapprehended the controlling law, Mr. Hollis's position, and the facts.  Id. at 205–11.  The district court denied the motion primarily on the grounds that the motion re-argued previous positions and made little effort to address its holding that Mr. Hollis knew or should have known of the rejection of UM/UIM coverage in 2013 and could have sought legal counsel (as he apparently did many years later) to explain the rejection and ostensible illusory coverage issue.  Id. at 226–27.  Instead, Mr. Hollis argued that "[t]his complaint is not about whether Mr. Hollis knew or did not know that he rejected stacked coverage but the fraudulent act of Defendant charging premiums on multiple vehicles for non-stacked UM/UIM coverage."  Id. at 207–08.  Mr. Hollis also argued that

the district court erred in concluding that his UPA claim sounded in contract (not in tort)

and therefore the continuing wrong doctrine applied.[3]  Id. at 207.

Mr. Hollis filed a notice of appeal of both the order of dismissal and the denial of

his motion to alter or amend judgment.[4]

**Discussion**

We review the district court's grant of a motion to dismiss for failure to state a

claim de novo.  Fed. R. Civ. P. 12(b)(6); Silver v. City of Albuquerque, 134 F.4th 1130,

1133 (10th Cir. 2025).  A complaint must allege sufficient facts to have facial

plausibility.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Though we accept as true all

well-pleaded facts, that does not apply to summary legal conclusions.  Id.  Accordingly, a

---

[3] Mr. Hollis does not raise this point in his opening brief; therefore it is waived.  Burke v. Regalado, 935 F.3d 960, 1014 (10th Cir. 2019).  Moreover, although the district court rejected the continuing wrong theory on other grounds, Aplt. App. 203–04, Mr. Hollis does not address the district court's rationale, see Aplt. Br. at 4, 19 (mentioning continuing wrong but not engaging with the district court's analysis); Aplt. Reply Br. at 14 (same).  Federal Rule of Appellate Procedure 28(a)(8)(A) requires that an opening brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]"  Argument on the applicability of the continuing violation theory has been waived.  Burke, 935 F.3d at 1014.  The mere statement in the reply brief that "the sale of illusory coverage without disclosure constitutes a continuing wrong" is insufficient.  Aplt. Reply Br. at 14.

[4] The district court granted Farm Bureau's motion to dismiss without prejudice on limitations grounds after supplemental briefing.  When a motion to dismiss is granted on limitations grounds the dismissal is in effect a dismissal with prejudice.  Rodriguez v. Colorado, 521 F. App'x 670, 671 (10th Cir. 2013) (citing Gocolay v. N.M. Fed. Sav. & Loan Ass'n, 968 F.2d 1017, 1021 (10th Cir. 1992)).

plaintiff is responsible for stating facts about events that suggest that a defendant is responsible for the harm alleged.  Id.

Though a statute-of-limitations claim is an affirmative defense, if the complaint establishes that the action is barred by the statute of limitations, dismissal for failure to state a claim is appropriate.  Jones v. Bock, 549 U.S. 199, 215 (2007).  As was done here, a district court may raise the limitations issue sua sponte and invite further briefing by the parties.  Day v. McDonough, 547 U.S. 198, 209–10 (2006); Vasquez Arroyo v. Starks, 589 F.3d 1091, 1097 (10th Cir. 2009).

We apply the limitations law based upon the law of the forum state, here New Mexico.  Allen v. Env't Restoration, LLC, 32 F.4th 1239, 1243 (10th Cir. 2022).  Our review is de novo.  Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991).  Our task is to ascertain and apply state law as pronounced by the state's highest court, but in the absence of on-point precedent, predict state law.  See Wade v. EMASCO Ins. Co., 483 F.3d 657, 66566 (10th Cir. 2007).  We may consult the decisions of the New Mexico Court of Appeals and federal district courts interpreting New Mexico law.  Id. at 666.

On appeal, Mr. Hollis does not contest the district court's conclusion that limitations periods between three and six years apply to his various claims.[5]  Aplt. App. 200–02.  Under the discovery rule "the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists."

---

[5] Farm Bureau contends that a four-year limitation period rather than a six-year limitation period should apply to the claim for breach of the covenant of good faith and fair dealing.  Aplee. Br. at 12 n.5.  In light of our disposition, it is unnecessary for us to resolve this point.

Roberts v. Sw. Cmty. Health Servs., 837 P.2d 442, 449 (N.M. 1992).  Likewise, there is

no dispute that the accrual date is 2013, and that New Mexico does not require an insured

to execute a new rejection for each policy renewal.  Aplt. App. 194–95, 198.  Although

Mr. Hollis makes some new arguments as to why the limitations period should be tolled,

he did not raise several of them before the district court when given the opportunity.  See,

e.g., Aplt. Br. at 13.  Farm Bureau argues that he cannot raise such arguments on appeal

and we agree.  See, e.g.,Aplee. Br. at 41–42.

Turning to the theory raised, Mr. Hollis argued that equitable tolling should apply

based upon affirmative conduct of Farm Bureau to conceal fraud and violation of

insurance laws.  Aplt. App. 181 (citing the entire complaint and Aldrich v. McCulloch

Props., Inc., 627 F.2d 1036, 1042 (10th Cir. 1980)).  He argued that he only became

aware of the UM/UIM issues through his lawyers and active litigation of his daughter's

personal injury case in state district court which involves the same policy.  Id. at 181–82.

According to Mr. Hollis, on September 2, 2022, a deposition of Farm Bureau's actuary

demonstrated that Farm Bureau charged multiple UM/UIM premiums on each vehicle.

Id. at 179–80.  Further, he explains that a deposition in his daughter's case on August 2,

2024 revealed the same issue on the Hollis policy and that Farm Bureau failed to offer

separate uninsured/underinsured property damage (UMPD) coverage and failed to

provide accurate uninsured/underinsured bodily injury (UMBI) premiums.  Id. at 180.

He cited to a state district court ruling, now on appeal, in his daughter's case that

8

reformed the policy based upon UMPD premiums being incorporated in the UMBI coverage.  Id. at 180.

### A.  General Limitation Principles

Statutes of limitation represent a balancing of "1) adequate time to injured plaintiffs to file a complaint and 2) certainty to defendants that their liability for past conduct will have a definite end."  Snow v. Warren Power & Mach., Inc., 354 P.3d 1285, 1291 (N.M. 2015).  It is well established that a limitation period is not tolled because a plaintiff lacks knowledge of the full extent of his or her injury.  Gerke v. Romero, 237 P.3d 111, 115 (N.M. Ct. App. 2010).  Rather, a statute of limitation begins to run when the plaintiff "has knowledge of sufficient facts to constitute a cause of action."  Id.  "The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action.  The action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." Coslett v. Third St. Grocery, 876 P.2d 656, 664 (N.M. Ct. App. 1994) (quoting Allen v. State, 826 P.2d 200, 203 (Wash. 1992)); see also Maestas v. Zager, 152 P.3d 141, 147 (N.M. 2007) (relying upon same principles).

### B.  Equitable Tolling

In New Mexico, equitable tolling is "a non-statutory tolling principle that provides relief in cases when circumstances beyond the plaintiff's control preclude filing suit within the statute of limitations."  Snow, 354 P.3d at 1290; see also Ocana v. Am. Furniture Co., 91 P.3d 58, 66 (N.M. Ct. App. 2004) ("Equitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event

9

beyond his or her control."). One relying upon equitable tolling must establish that (1) he has been pursuing his rights diligently and (2) that some extraordinary circumstance prevented him from doing so. Credit Suisse Sec. (USA), LLC v. Simmonds, 566 U.S. 221, 227 (2012). If equitable tolling applies, the limitation period is suspended. Ocana, 91 P.3d at 66.

We reject the idea that information learned in another case in 2022 and subsequent information learned in his daughter's case against Farm Bureau in 2024 constitute extraordinary circumstances that prevented Mr. Hollis from pursuing his rights diligently in this case.[6] The fact that Mr. Hollis might have learned "certain details" or additional unspecified information about how Farm Bureau calculated the UM/UIM premiums in 2022 does not bear on the 2013 policy documents which contain a rejection of stacked coverage and list separate UM and UIM coverages. Moreover, the deposition in his daughter's case in 2024 occurred after this lawsuit was filed and logically cannot have prevented him from filing suit. Likewise, the state district judge's order in his daughter's case occurred after 2024 and apparently turns on claims of UMPD premiums being incorporated in the UMBI coverage, claims not contained in Mr. Hollis's complaint.

### C. Fraudulent Concealment

An extraordinary event that could toll the limitations period is fraudulent concealment, where "conduct by a defendant that caused the plaintiff to refrain from filing an action during the applicable period." Roberts v. Barreras, 484 F.3d 1236, 1241–

---

[6] Farm Bureau points out that these reasons do not appear in the complaint and Mr. Hollis never sought leave to amend. Aplee. Br. at 31–34.

42 (10th Cir. 2007) (applying New Mexico law). Fraudulent concealment in this context requires: "(1) the use of fraudulent means by the party who raises the bar of the statute; (2) successful concealment from the injured party; and (3) that the party claiming fraudulent concealment did not know or by the exercise of reasonable diligence could not have known that he might have a cause of action." Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 858 P.2d 66, 74 (N.M. 1993); see also Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1217 (D.N.M. 2014) (discussing fraudulent concealment). As Mr. Hollis indicates, the party asserting "must plead the circumstances giving rise to estoppel with particularity." Aplt. Br. at 10; Cont'l Potash, 858 P.2d at 74. "Bald allegations of concealment are not sufficient to make out a case of fraudulent concealment." Cont'l Potash, 858 P.2d at 74.

Judged against these standards, Mr. Hollis has not pointed to anything showing fraudulent means on the part of Farm Bureau. In 2013, Mr. Hollis selected UM coverage of $250,000 per person and $500,000 per accident on a form that included the costs of various levels of stacked UM coverage. Aplt. App. 167–68; see also Compl. ¶ 15 (Aplt. App. 8) (2020 policy). He signed a form rejecting stacked coverage: "I reject Intra-Policy Stacked UM Coverage and, instead, am purchasing Non Stacked UM Coverage." Aplt. App. 168. Above that, the form explained that "Intra-Policy Stacked UM Coverage refers to combining the UM coverage limits, for you and members of your household, for each vehicle specifically insured for UM coverage under the policy." Id. Mr. Hollis maintains that the declarations page contains a single premium for each vehicle which aggregates the separate premiums for UM and UIM coverages. Compl. ¶¶ 21–23 (Aplt.

11

App. 9). He contends that this is contrary to New Mexico law and that "New Mexico law requires that [Farm Bureau] disclose the illusory nature of its coverage and requires the disclosure of the multiple premium charges for purportedly non-stacked coverage. Then, only after proper disclosure, would the statute of limitations be triggered." Aplt. Reply Br. at 3.

There is no dispute that the insurance forms are similar in all material respects in 2013, 2017, and 2020. The basis of Mr. Hollis's complaint originates from the 2013 form. Mr. Hollis rejected stacked coverage in 2013 as evidenced by the signed selection/rejection form. Aplt. App. 168 (2013 Policy), see also id. at 42 (2020 Policy), 174 (2017 Policy). On appeal, Mr. Hollis focuses on a "systemic practice of charging per-vehicle UM/UIM premiums despite representing to policyholders that they were paying only a single premium." Aplt. Br. 12. But while the declarations page indicated the amount of premium per vehicle, it also listed line by line the coverages including Auto Uninsured Motor Vehicle and another for Auto Underinsured Motor Vehicle, although an amount charged for each of seven coverages was not listed. Compl. ¶¶ 22–23 (Aplt. App. 9); Aplt. App. 38 (2020 policy; 1997 Tacoma), 170 (2013 Policy; 1997 Tacoma); 176 (2017 Policy; 1997 Tacoma). The declarations pages did list the limits of liability for the various coverages and also indicated that for each vehicle "Uninsured and Underinsured Stacking Rejected." Aplt. App. 37–39 (2020 policy), 170–71 (2013 Policy); 176 (2017 Policy).

Mr. Hollis really makes no effort to provide any facts addressing the third element of fraudulent concealment, that he did not know or by the exercise of reasonable

diligence could not have known that he might have a cause of action.  Instead, he makes a legal argument that "New Mexico law does not allow the sale of illusory coverage without proper disclosure."  Aplt. Br. at 3 (citing Crutcher v. Liberty Mut. Ins. Co., 501 P.3d 433, 441 (N.M. 2022)); Smith v. Interinsurance Exch. of Auto. Club, 563 P.3d 868, 872 (N.M. 2024) (holding Crutcher retroactive).  As we understand the argument, Mr. Hollis would have the court hold that any time policy documents are later determined to be deficient or ambiguous and the insurer has not previously stated as such, the limitation period is tolled.

A recurring theme in Mr. Hollis's brief is that the district court did not adequately consider the following cases: Crutcher, Smith, Progressive Nw. Ins. Co. v. Weed Warrior, 245 P.3d 1209 (N.M. 2010), and Romero v. Dairyland Ins. Co., 803 P.2d 243 (N.M. 1990).  From these cases, he maintains that insureds have no duty to evaluate policy documents that may be ambiguous or contain misrepresentations and that insureds like Mr. Hollis should not be required to present policies to an insurance lawyer to protect their rights from the sale of illusory coverages without proper disclosure.  Aplt. Br. at 4, 13–14, 17–18.  Rather, the operative facts for the limitations issue are the insurer's knowledge of its premium structure and its failure to disclose illusory coverage that violates New Mexico law.  Aplt. Reply. Br. at 11.

There are at least three problems with this line of argument.  First, this argument and these cases were never presented to the district court when it asked for supplemental briefing.  Second, although Mr. Hollis cited Crutcher, Weed Warrior, and Romero in his motion to alter or amend, Aplt. App. 206-07, a motion to alter or amend is not the place

13

to raise arguments and authorities which could have been presented before, Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). Finally, none of these cases dealt with limitations.

Be that as it may, we find no support for the notion that in New Mexico, statutes of limitation do not apply to actions involving insurance policies. And we would be reticent to expand state law without clear guidance from the State's highest court particularly where such an expansion would affect the important policies behind repose. See Taylor v. Phelan, 9 F.3d 882, 887 (10th Cir. 1993). Nothing suggests that these cases considered the animating principles behind limitations. A rule that tolled the start of the limitations period until a plaintiff understood whether the facts are enough to prevail on a legal claim would render the discovery rule meaningless and "would postpone accrual . . . until [a] plaintiff consult[ed] an attorney." See Coslett, 876 P.2d at 664 (quoting Allen, 826 P.2d at 203).

Although Mr. Hollis contends that the issues in this case cannot be decided without discovery, we agree that the allegations in the complaint originate from the face of the documents he first received from Farm Bureau in 2013. Accordingly, Mr. Hollis knew, or should have known, of the factual basis for his claims (which center around his express rejection of UM/UIM coverage) when he received these materially identical

documents in 2013.  The district court did not abuse its discretion in denying Mr. Hollis's motion to alter or amend the judgment and its judgment is

AFFIRMED.

Entered for the Court

Paul J. Kelly
Circuit Judge